# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LUEGENE A. HAMPTON
        Petitioner,

        v.                                             Case No. 04C252

MICHAEL THURMER
        Respondent.

## DECISION AND ORDER

Petitioner Luegene A. Hampton, a Wisconsin state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction after a jury trial of first-degree intentional homicide as a party to a crime on the ground that his trial counsel was ineffective for failing to object to a defective jury instruction. After trial, petitioner moved for post-conviction relief, and his motion was denied. He subsequently appealed, and the state court of appeals affirmed his conviction. The state supreme court denied review.

## I. BACKGROUND

The state charged petitioner in a four-count information. Count One charged him with first-degree intentional homicide as a party to a crime in connection with the fatal shooting of Harry Roberts. Count Two charged him with attempted first-degree intentional homicide as a party to a crime in connection with the non-fatal shooting of Walter Parker, and Count Three charged him with attempted first-degree intentional homicide as a party to a crime in connection with the non-fatal shooting of Michael Moore. Count Four charged him with armed robbery as a party to a crime in connection with the robbery of Moore. The

jury convicted petitioner of the offenses charged in Counts One, Three and Four and acquitted him of the charge in Count Two. The trial court sentenced petitioner to life in prison.

The state court of appeals summarized the evidence adduced at trial as follows:

¶2 On August 13, 1994, at approximately 2:30 a.m., three individuals exited a nightclub on the north side of Milwaukee. The three men, who were later identified as Michael Moore, Walter Parker and Harry Roberts, entered Roberts's four-door Cadillac, which was parked down the street. Roberts sat in the front drivers seat, Moore in the front -passengers seat, and Parker in the rear-passengers seat.

¶3 After Roberts started the vehicle, the two passengers rolled down their windows. As they rolled down the windows, they heard shouting and saw Moore exit the vehicle. Gunfire immediately rang out. Moore was shot three times in the arm, once in the upper chest and once in the wrist. He was also robbed of $380 as he lay bleeding. Parker was shot once in the neck and once in the shoulder. Roberts's dead body was found lying behind his Cadillac. He had been shot five times - in the arm, shoulder, thigh, and twice in the chest. The bullets that entered his chest fatally struck his liver, pancreas and heart. Two bullets were recovered from Roberts's dead body and identified as nine-millimeter. Two nine-millimeter bullets were also recovered from Moore's body.

¶4 At trial, Parker testified that after he was shot he saw people outside of the car holding handguns and wearing ski masks. Moore also testified that he was shot and robbed by the same individuals wearing ski masks.

¶5 A bystander, Thomas Howard, stated that as Roberts was collapsing in the street, a police cruiser drove around the corner. When the shooters spotted the police vehicle, they quickly ran down the block. The police officers called for backup assistance and immediately pursued the fleeing suspects. The officers arrested Hampton and his half-brother, Alonzo Perry, a few blocks from the scene of the crime. In the general area where Hampton was arrested, the police also recovered the following items: a black-knit ski mask, a loaded nine-millimeter magazine clip, and a .45 caliber semi-automatic handgun. Hampton and Perry were later brought back to the scene of the shooting where Howard identified them as the shooters by their clothing. Officers Walsh and July, the first two officers on the scene, also identified them as the shooters. Hampton gave a statement to police admitting that he had been at the scene, panicked, and began running

2

towards Roberts while shooting a nine-millimeter weapon. He stated that he didn't know how many shots he had fired.[1]

State v. Hampton, No. 01-3091-CR, 2002 WI App 292, ¶ 2-5, 2002 WL 31247352 at *1.

It is not disputed that the jury instruction relating to Count One was flawed. At the trial's close, the court first read the four-count information to the jury and then, in instructing it, overlooked the fact that unlike Counts Two and Three, which charged attempted homicides, Count One charged petitioner with a completed homicide. Thus, instead of reading a separate completed homicide instruction with respect to Count One, the court read the general pattern instruction for attempt, WIS. JI - CRIMINAL 580, once, indicating its applicability to Counts One, Two and Three. Where the insertion of a victim's name was required, the court inserted Roberts's name. The court also sent the 580 instruction to the jury room, but where that instruction called for inserting the intended crime, the court inserted WIS. JI - CRIMINAL 1010, the instruction for first-degree intentional homicide. In connection with Count One, the court also read and sent to the jury room WIS. JI - CRIMINAL 1030, pertaining to the lesser-included offense of felony murder. The court also submitted a verdict form with respect to Roberts, which gave the jury the options of convicting defendant of first-degree intentional homicide or felony murder or finding him not guilty.

The instruction that the court read is as follows:

> If any members of the jury has an impression of my opinion as to whether the defendant is guilty or not guilty, disregard such impression entirely and decide the issues of fact solely as you view the evidence. You,

---

[1] Petitioner points out that in his trial testimony, Thomas did not identify Hampton and Perry as the "shooters" but as the men he saw running in the street. (Pet'r's Statement of Facts, Ex. W at 3-17.)

3

the jury, are the sole judges of the facts and the Court is the Judge of the law only.

The first count of the information in this case charges that on August 13th of 1994 at 3447 North 6th Street, City of Milwaukee, as party to a crime, Luegene A. Hampton did cause the death of another human being, Harry D. Roberts, with intent to kill that person contrary to Wisconsin Statutes.

To this charge, the defendant has entered a plea of not guilty, which means the State must prove every element of the offense charged beyond a reasonable doubt.

The second count of the information charges that on August 13th of 1994 at 3447 North 6th Street, City of Milwaukee, as party to a crime, Luegene A. Hampton did attempt to cause the death of another human being, Walter Parker, with intent to kill that person, contrary to Wisconsin Statutes.

To this charge, the defendant also entered a plea of not guilty, which means the State must prove every element of the offense charged beyond a reasonable doubt.

The third count of the information charges that on August 13th of 1994 at 3447 North 6th Street, City of Milwaukee, as party to a crime, Luegene A. Hampton did attempt to cause the death of another human being, Michael Moore, with intent to kill that person contrary to Wisconsin Statutes.

And to this charge, the defendant also entered a plea of not guilty which means the State must prove every element of the offense charged beyond a reasonable doubt.

The fourth count of the information charges that on August 13th of 1994 at 3447 North 6th Street, City of Milwaukee, as a party to a crime with intent to steal, Luegene A. Hampton did by use or threat of use of a dangerous weapon take property from the person of Michael Moore, the owner, by using force against that person against that person of the owner with intent thereby to overcome the said owner's physical resistance or physical power of resistance to the taking and carrying away of said property contrary to Wisconsin Statutes.

To this charge, the defendant also entered a plea of not guilty which means the State must prove every element of the offense charged beyond a reasonable doubt.

An information is nothing more than a written, formal accusation against a defendant charging the commission of one or more criminal acts. You are not to consider it as evidence against the defendant in any way. It does not raise any inference of guilt.

Evidence is:

First, the sworn testimony of witnesses both on direct and cross examination regardless of who called the witness.

Second, the exhibits the Court has received into the trial record.

Third, any facts to which the lawyers have agreed to stipulated or which the Court directed you to find.

Anything you may have seen or heard outside the court room is not evidence. You are to decide the case solely on the evidence offered and received at trial.

In reaching your verdict, examine the evidence with care and caution. Act with judgment, reason and prudence.

Defendants are not required to prove their innocence. The law presumes every person charged with the commission of an offense to be innocent. This presumption requires a finding of not guilty unless in your deliberations it is overcome by evidence which satisfies you beyond a reasonable doubt that the defendant is guilty.

The burden of establishing every fact necessary to constitute guilt is upon the State. Before you can return a verdict of guilty, the evidence must satisfy you beyond a reasonable doubt that the defendant is guilty. If you can reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, you should do so and return a verdict of guilty. The term reasonable doubt means a doubt based upon reason and common sense. It is a doubt for which a reason can be given arising from a fair and rational consideration of the evidence or lack of evidence.

It means such a doubt as would cause a person of ordinary prudence to pause or hesitate and called upon to act upon the most important of affairs of life.

Reasonable doubt is not a doubt which is based upon mere guesswork or speculation. A doubt which arises merely from sympathy or fear to return a verdict of guilt is not a reasonable doubt.

A reasonable doubt is not a doubt such as may be used to escape the responsibility of a decision.

While it is your duty to give the defendant the benefit of every reasonable doubt, you are not to search for the doubt. You are to search for the truth.

The crime of attempt, as defined in 939.32 of the Criminal Code of Wisconsin, is committed by one who, with intent to perform acts and attain a result which, if accomplished, would constitute a crime, does acts towards the commission of a crime which demonstrate unequivocally, under all the circumstances, that he had formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor.

The defendant in this case is charged with attempted first degree intentional homicide. Before the defendant may be found guilty of attempted first degree intentional homicide, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following two elements were present.

First, that the defendant intended to commit the crime of first degree intentional homicide.

Second, that the defendant did acts which demonstrate unequivocally, under all the circumstances, that he intended to and would have committed the crime of first degree intentional homicide except for the intervention of another person or some other extraneous factor.

The first element requires that the defendant intended to commit the crime of first degree intentional homicide.

To enable you to determine whether the defendant intended to commit first degree intentional homicide, it is necessary that you understand what constitutes first degree intentional homicide.

The crime of first degree intentional homicide is committed by one who causes the death of another human being with intent to kill that person or another.

Before the defendant may be found guilty of first degree intentional homicide, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following two elements were present.

First, that the defendant cause the death of Harry Roberts.

6

Second, that the defendant intended to kill Harry Roberts, another human being.

The first element requires that the relation of cause and effect existed between the death of Harry Roberts and the act of the defendant. Before the relation of cause and effect can be found to exist, it must appear that the defendant's act was a substantial factor in producing the death.

The second element requires that the defendant acted with intent to kill Harry Roberts, another human being. Under the criminal code, the phrase with intent to kill means that the defendant had the mental purpose to take the life of another human being or was aware that his conduct was practically certain to cause the death of another human being.

While the law requires, in order to constitute first degree intentional homicide, that the defendant acted with intent to kill, it does not require that the intent exists for any particular length of time before the act is committed or that the act be brooded over, considered, or reflected upon for a week, a day, an hour, or even for a minute. There need not be any appreciable time with the formation of the intent and the act.

Intent to kill, which is an essential element of this offense, is not more or less than the mental purpose to kill or the awareness that the conduct was practically certain to cause the death of another formed on the instant preceding the act or sometime before that and which continued to exist at the time of the act.

Intent to kill must be found as a fact before you can find the defendant guilty of first degree intentional homicide. You cannot look into a person's mind to find out his intent. You may determine such intent directly or indirectly from all the facts in evidence concerning this offense.

You may consider any statements or conduct of the defendant which indicate his state of mind. You may find intent to kill from such statements or conduct but you are not required to do so.

You are the sole judges of the facts, and you must not find the defendant guilty unless you are satisfied beyond a reasonable doubt that the defendant intended to kill.

Proof of motive to commit a crime is not necessary to a conviction. While motive may be shown as a circumstance to aid and establishing the guilt of the defendant, the State is not required to prove motive on the part of the defendant in order to convict him.

7

Evidence of motive does not establish guilt. It is to be given such weight by the jury as you believe it is entitled to under all the circumstances.

If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant caused the death of Harry Roberts by an act committed with the intent to kill, you should find the defendant guilty of first degree intentional homicide. If you are not so satisfied, you must find the defendant not guilty.

The crime charged against the defendant in this case, however, is not first degree intentional homicide, as defined, but an attempt to commit the crime of first degree intentional homicide.

The second element of the attempted first degree intentional homicide requires that the defendant did acts toward the commission of a crime of first degree intentional homicide which demonstrate unequivocally under all the circumstances that he intended to and would have committed the crime of first degree intentional homicide except for the intervention of another person or some other extraneous factor.

This element requires that the defendant not only did acts which demonstrated the defendant committed the first degree intentional homicide but that he did acts which under the circumstances demonstrate unequivocally that he intended and would have committed the crime of first degree intentional homicide except for the intervention of another person or some other extraneous factor.

Unequivocally means that no other inference or conclusion can reasonably and fairly be drawn from the defendant's acts under the circumstances. Another person means anyone but the defendant (actor) and may include the intended victim.

An extraneous factor is something outside the knowledge of the defendant actor or outside of his control.

If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant intended to commit the crime of first degree intentional homicide and that he performed acts toward the accomplishment of such intent to commit first degree intentional homicide which demonstrate unequivocally, under all the circumstances, that he had formed the intent to commit first degree intentional homicide, and would have committed the crime of first degree intentional homicide except for the intervention of another person or some other extraneous factor, you should find the defendant guilty of first degree intentional homicide.

If you are no so satisfied, you must find the defendant not guilty.

(Trial Tr. vol. 39, 29-40, January 12, 1995, D.I. 11, Ex. Y.)

In his habeas petition, petitioner does not contest his Count Three conviction of attempted first-degree intentional homicide or his Count Four conviction of armed robbery but contends that his trial counsel's failure to object to the jury instruction concerning the Count One charge of first-degree intentional homicide requires that his conviction on that charge be vacated. Petitioner contends that the trial court did not submit the first-degree intentional homicide charge and that his counsel's failure to object prejudiced him because it resulted in the jury's not considering his defense, which was that although he fired shots and may thereby have committed <u>attempted</u> first-degree intentional homicide, someone else fired the shots that actually caused Robert's death.

The state court of appeals rejected petitioner's argument. It determined that the defect in the instruction was harmless because the overall meaning of the instruction communicated a correct statement of law to the jury. Therefore, applying the familiar principles of <u>Strickland v. Washington</u>, 466 U.S. 688 (1984), petitioner was not prejudiced by his counsel's failure to object to it. The court rejected petitioner's argument that the instruction prevented the jury from considering his defense.

## II. DISCUSSION

In order to prevail in his habeas action, petitioner must show that the decision of the state court of appeals, the last state court to rule on the merits of his claim, was "contrary to or involved an unreasonable application of clearly established federal law," § 2254(d)(1),

9

or "was based on an unreasonable determination of the facts," § 2254(d)(2).[2] Petitioner relies on § 2254(d)(1), arguing that in concluding that his trial counsel's failure to object to the defective instruction was not prejudicial, the state court of appeals unreasonably applied Strickland.

To succeed on an ineffective assistance of counsel claim, petitioner must show that his counsel's performance was both deficient and prejudicial. Strickland, 466 U.S. at 687-88, 694. Counsel's performance is deficient if it falls "below an objective standard of reasonableness." Id. at 687-88. Counsel's performance is prejudicial if there is a reasonable probability (sufficient to undermine confidence in the trial's outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694.

In order to determine if the failure to object caused prejudice, it is first necessary to examine the procedure for reviewing jury instructions. Courts review jury instructions not in isolation, but in the context of the overall charge, which includes "testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge." Cupp v. Naughten, 414 U.S. 141, 146-47 (1973). Merely being incorrect under state law is not a basis for habeas relief. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 72 (1991). The question is "whether the ailing instruction by itself so infected the entire

---

[2]Petitioner contends that the less-demanding pre-AEDPA standard of review applies because the state court of appeals did not address the merits of his ineffective assistance claim. However, this is incorrect. The state court considered and expressly rejected petitioner's claim, holding that he was not prejudiced by his counsel's failure to object to the defective instruction.

10

trial that the resulting conviction violates [federal] due process." Id. (quoting Cupp, 414 U.S. at 147).

The court of appeals did not unreasonably apply Strickland in finding that petitioner was not prejudiced by the instruction. It looked at the complete record, concluding that the overall meaning communicated by the instruction was a correct statement of the law. This was a reasonable application of Strickland because a harmless error cannot create a reasonable probability of a different result but for the error. Strickland, 466 U.S. at 694. Indeed, reviewing the closing arguments, the oral instructions, the written instructions, the charging information, the testimony, and evidence submitted at trial, it is not reasonable to believe that the defective jury instruction led the jury to think that it could convict petitioner of intentional homicide using the general attempt instruction. Both counsels and the trial judge informed the jury numerous times that count one charged petitioner with intentional homicide, and that the state had the burden to prove beyond a reasonable doubt that petitioner intended to kill Roberts and did in fact kill him. The evidence and testimony, including petitioner's own statements, showed that Roberts died suddenly after being shot multiple times by petitioner at close range. The written pattern homicide instructions were in the jury room. The verdict form with respect to Roberts indicated a choice between intentional homicide and felony murder, not attempted homicide. Based on the substantial evidence of guilt in the record and the instructions to the jury, I cannot say that in concluding that an objection by petitioner's counsel would have not created a reasonable probability of a different outcome, the court of appeals unreasonably applied Strickland. This is especially true when petitioner points to no evidence in the record plausibly supporting his defense of an unknown, unseen, unrelated shooter.

11

The court of appeals "took the constitutional standard seriously and produce[d] an answer within the range of defensible positions." Taylor v. Bradley, 448 F.3d 942, 948 (7th Cir. 2006) (quoting Mendiola v. Schomig, 224 F.3d 589, 591 (7th Cir. 2000)).

Therefore, for the reasons stated,

**IT IS ORDERED** that petitioner's application for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED.**

Dated at Milwaukee, Wisconsin this 23 day of October, 2009.

/s_____
LYNN ADELMAN
District Judge